MEMORANDUM OPINION

 

 

No. 04-08-00100-CV

 

Kenneth B. CHANDLER
and Anna J. Chandler,

Appellants

 

v.

 

FORD MOTOR CREDIT
COMPANY, LLC and North Park Lincoln Mercury,

Appellees

 

From the 225th Judicial
District Court, Bexar County, Texas

Trial Court No. 2007-CI-10667

Honorable Michael P.
Peden, Judge Presiding

 

Opinion by:     Rebecca Simmons, Justice

 

Sitting:            Karen
Angelini, Justice

                        Rebecca
Simmons, Justice

                        Steven C.
Hilbig, Justice

 

Delivered and
Filed:   March 4, 2009

 

AFFIRMED

 

Kenneth
and Anna Chandler appeal from a final judgment confirming an arbitration award
in favor of Ford Motor Credit Company (Ford Credit) and North Park Lincoln
Mercury (North Park).  Contending that the arbitrator manifestly disregarded
the law, the Chandlers challenge the trial court’s denial of their motion to
vacate the arbitration award.  We affirm the judgment of the trial court.

Factual Background

This
case arises out of a lease agreement for a 2002 Lincoln LS.  The Chandlers, lessees, and North Park, lessor, executed the lease in August of 2002 with Ford
Credit as the holder and assignee of the lease.  The lease obligated the Chandlers to make thirty-six monthly payments to Ford Credit.  Upon failure to make a
timely payment, the default provision gave Ford Credit the right to repossess
and sell the vehicle.  An arbitration provision provided that all disputes were
subject to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (2006), and would
be submitted to the American Arbitration Association (AAA) or another
association agreed upon by the parties. 

The
 Chandlers experienced brake problems with the vehicle from the beginning of
the lease.  Following a series of attempted brake repairs, the Chandlers refused to make the February 2005 payment.  In March 2005, the Chandlers returned
the vehicle to North Park for additional brake repairs.  More than two weeks
later, the Chandlers informed Ford Credit that they would not make further
lease payments because of the continuing brake problems and notified North Park that they would not retrieve the vehicle.  

            In early
April 2005, Ford Credit sent the Chandlers a Notice of Default and Right to
Cure, requiring them to pay the February and March lease payments along with a
late fee.  The Chandlers contacted Ford Credit regarding the overdue payments
on April 14th.  Ford Credit faxed a Lease Extension Agreement the same day that
provided the February, March, and April payments would be extended to August,
September, and October, respectively.  Under the offer, the next lease payment
would be due on May 28, 2005.  

On
April 19, 2005, five days after receipt of the extension, the Chandlers
returned the signed agreement with the following note: 

I want to be certain
that by signing the documents I am not re-obligating myself to the terms that I
am disputing.  Per our conversation, the purpose of the extension is to
“buy-time” in which a solution could be reached while protecting my valuable
reputation and credit-worthiness.  If this is not true, please disregard this
request. 

 

That same day,
Ford Credit revoked the offer and repossessed the vehicle due, in part, to the Chandlers’ nonpayment and their abandonment of the vehicle.  Ford Credit did not give
notice of either the revocation or the repossession.  

In
November 2006, the Chandlers filed claims against Ford Credit and North Park with AAA, alleging Ford Credit breached the contract by wrongfully repossessing
the vehicle and asserting other causes of action.  The Chandlers claimed that they
were not in default because the parties executed the payment extension
agreement.  Ford Credit filed a counterclaim denying the validity of the
payment extension agreement and asserting the Chandlers abandoned the vehicle.  North Park filed an answer denying all of the allegations.

The
arbitration hearing was scheduled for May 22, 2007.  The Chandlers did not
appear at the hearing and made no effort to reschedule the hearing.  Nine days
later, the Chandlers requested the hearing be reopened.  The arbitrator agreed
and ordered all evidence submitted by June 25, 2007.  On June 27, 2007, two
days after the arbitration deadline, the Chandlers submitted approximately 500
pages of documents.  After considering the testimony and evidence submitted by
Ford Credit and North Park, and all of the materials submitted by the Chandlers, the arbitrator found that the Chandlers did not accept the payment extension
offer prior to Ford Credit’s revocation and were in default at the time of
repossession.  

In
a detailed, lengthy, written opinion, the arbitrator detailed the Chandlers’ requested damages and their failure to submit proof with regard to each. 
Additionally, the arbitrator explained:

[The Chandlers] failed to prove their alleged loss of income through the documents submitted. 
At best, [the Chandlers] showed that they had credit problems.  However, they
failed to show that their credit problems were caused by the actions of any of
the responding parties.

 

. .
. . 

 

Although [the Chandlers] showed that mental duress was unquestionably caused by the stress of this
years-long dispute, [the Chandlers] failed to show that the responding parties
were the cause.

 

In summarizing
his findings, the arbitrator concluded:

[A]lthough it is
clear that [the Chandlers] were frustrated, frightened, and angry about their
difficulty in obtaining brake repairs on the Vehicle from [North Park], these
emotional states do not constitute the types of injuries that would support the
damages in contract, tort, or statute that they seek, with the sole exception of
the $784.07 for loss of personal items.[1] 


 

Accordingly, the
arbitrator denied all of the Chandlers’ remaining claims and awarded Ford
Credit damages of $3,587.26 plus attorney’s fees of $1,500.00.  

            In
July 2007, Ford Credit filed a petition to confirm the arbitration award with
the trial court.  In response, the Chandlers filed a petition to vacate the
award, citing the arbitrator’s manifest disregard of the law.  North Park later intervened as a party to the arbitration, requesting confirmation of the award. 
On November 15, 2007, the trial court rendered a final judgment confirming the
award and denying the Chandlers’ request to vacate.  The Chandlers appeal the
trial court’s confirmation of the arbitration award.

Standard of Review

The
parties agree that the FAA applies to this case.  See 9 U.S.C. §§ 1–16
(2006).  Under the FAA, we review the trial court’s confirmation of the
arbitration award de novo.  GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.,
126 S.W.3d 257, 262 (Tex. App.—San Antonio 2003, pet. denied).  “In Texas, review of arbitration awards is extraordinarily narrow.”  Id.  Both the trial
court and the appellate court are required to indulge every reasonable
presumption to uphold the arbitration award.  Massey v. Galvan, 822
S.W.2d 309, 316 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (citation
omitted).  This deference afforded to the arbitration award acknowledges the
court’s desire to prevent “‘disappointed litigants [from] seek[ing] to overturn
every unfavorable arbitration award in court.’”  Crossmark, Inc. v. Hazar,
124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied) (quoting Daniewicz
v. Thermo Instrument Sys., Inc., 992 S.W.2d 713, 716 (Tex. App.—Austin 1999, pet. denied)).  

Relying
on several Fifth Circuit cases, the Chandlers assert that a court may vacate an
award (1) if the award is the result of the arbitrator’s manifest disregard of
the law, or (2) if the award is contrary to public policy.  Myer v. Americo
Life, Inc., 232 S.W.3d 401, 408 (Tex. App.—Dallas 2007, no pet.) (citing
Fifth Circuit cases); see also Roehrs v. FSI Holdings, Inc., 246 S.W.3d
796, 814 (Tex. App.—Dallas 2008, pet. denied) (relating federal courts’
“‘severely limited’” standard of review for setting aside arbitration awards
based on manifest disregard of the law).  

Although
certain common law exceptions have been recognized by prior courts, the United
States Supreme Court recently clarified the standard in Hall Street Associates,
L.L.C. v. Mattel, Inc. providing that the statutory grounds for judicial
vacatur and modification, or correction of an arbitration award, are exclusive
and may not be supplemented by contract.  Hall St. Assocs., L.L.C. v.
Mattel, Inc., 128 S. Ct. 1396, 1403 (2008); see also 9 U.S.C. §§ 10,
11 (2006).  In Hall Street, the Supreme Court reiterated that the basic
tenets of the FAA are “at odds with enforcing a contract to expand judicial
review following the arbitration.”  Hall Street, 128 S. Ct. at 1404.  

More
importantly, Hall Street specifically overruled vacatur based on “manifest
disregard” explaining that the lower courts’ previous determinations based on
the arbitrator’s manifest disregard of the law were based on a misreading of
the Court’s opinion in Wilko v. Swan, 346 U.S. 427 (1953).  Hall Street, 128 S. Ct. at 1404.  Texas courts have also adopted the Hall Street holding.  Wood v. Penntex Res. LP, No. H-06-2198, 2008 WL 2609319,
at *8 n.4 (S.D. Tex. June 27, 2008) (recognizing that Hall Street
overruled “manifest disregard of the law” as an independent basis for vacatur);
Quinn v. Nafta Traders, Inc., 257 S.W.3d 795, 798 (Tex. App.—Dallas
2008, pet. filed) (adopting the principles reflected in Hall Street).

An application to the trial court to
affirm an arbitration award must be granted “‘unless the award is vacated, modified,
or corrected.’”  See Hall Street, 128 S. Ct. at 1405 (quoting 9 U.S.C. §
9 (2006)).  In order to vacate an arbitration award under the FAA, the
challenger must satisfy one of the statutory grounds set forth in the FAA: (1)
the award was fraudulently procured, (2) there was evidence of partiality or
corruption of the arbitrator, (3) the arbitrator was guilty of misconduct that
prejudiced the rights of a party, or (4) “the arbitrator [] exceeded [the
arbitrator’s] powers, or so imperfectly executed them that a . . . definite
award . . . was not made.”  9 U.S.C. § 10(a) (2006).

Vacating an
Arbitration Award

In
their brief, the Chandlers contend that this court should vacate the arbitration
award because of the arbitrator’s manifest disregard of the law.  The
brief provides no discussion, legal authority, or analysis to support their
position under the applicable standards of the FAA after Hall Street.  The Chandlers contend the arbitrator should have based his decision on
their acceptance of Ford Credit’s offer evidenced by the Chandlers’
counteroffer.  They claim that the arbitrator knew that Ford Credit’s
revocation was invalid, but ignored the law of contracts by awarding damages in
spite of a valid revocation.  The Chandlers’ basis for revoking the arbitration
award does not fall within the statutory grounds under the FAA.

Conclusion

Under
our “extraordinarily narrow” review, as defined by Hall Street, the Chandlers failed to meet their burden of demonstrating any of the statutory grounds set
forth in the FAA.  See 9 U.S.C. § 10(a) (2006).  Accordingly, the
judgment of the trial court confirming the Award of Arbitrator is affirmed.[2]

 

Rebecca Simmons, Justice









[1]
 Prior to the Chandlers filing their arbitration claim, Ford Credit agreed to
compensate the Chandlers for the loss of the personal items left in the
repossessed vehicle. 





[2]
 Because our holding is dispositive of this appeal, we need not address the Chandlers’ second issue (sufficiency of the record).  See Tex. R. App. P. 47.1 (encouraging concise opinions addressing
only those issues “necessary to final disposition of the appeal”).